[Civ. No. 6127. First Appellate District, Division Two.—February 21, 1928.]

RALPH E. REICHERT et al., Plaintiffs and Appellants, v. WILEY T. RABUN et al., Defendants and Appellants; MICHAEL H. DOLL et al., Respondents.

Walter W. Hoye for Appellants Rabun et al.

Thomas V. Cassidy and Charles G. Hedgcock for Appellants Reichert et al.

Edward H. Miller and Arch G. McLay for Respondents Doll et al.

NOURSE, J.—Plaintiffs sued to quiet title to certain lots of land situated in Los Angeles County. Defendants Doll defaulted and defendants Rabun filed an answer and cross-complaint. Judgment went for defendants Rabun on their cross-complaint giving relief to plaintiffs against the Dolls beyond the issues raised in the complaint. This judgment was set aside and both plaintiffs and cross-complainants appeal on a joint bill of exceptions.

The complaint was in the usual form and described the property involved as lots 20 and 21 in block "E" of Nadeau Vineyard Tract according to the map of the tract recorded with the county recorder, and also the north 10 feet of Irene Avenue, a vacated public way. Service of this complaint was made upon the defendants Doll and their default was duly entered. The defendants Rabun, owners of lots 22, 23, and 24 adjoining plaintiffs on the east, filed a cross-complaint against plaintiffs alone in which they pleaded that, though it appeared on the recorded map of the tract that each of the lots in block "E" was 50 feet in width, each was in fact 52.41 feet in width. They then described by metes and bounds the land claimed by them having a frontage of 157.23 and asked that their title be quieted to that area. The theory upon which relief was sought under the cross-complaint was that there was an excess of ground along the entire width of block "E" over that shown upon the map; that this map, filed for record in 1888, had incorrectly described the 12 lots in that block as of 50 feet in width and had given the entire frontage of the block as 600 feet, whereas this frontage should have been shown as 629.02 feet; and that the cross-complainants, as owners of three of the 12 lots, were entitled to an equitable adjustment of this excess in frontage amounting to 2.41 feet to each lot. In their answer to the cross-complaint the plaintiffs pleaded that this excess had been taken and held under adverse possession for a period of more than five years by an occupant and claimant who had inclosed, cultivated, and improved said property and paid all taxes thereon; that, upon the recognition by the other lot owners of the block of such adverse holding of such excess, they had built houses, fences, and other improvements of great value upon their several lots and that it would be unjust and inequi-

table to apply the rule of apportionment to such owners. The case which was thus framed by the cross-complaint and the answer to it was that the map of the tract which had been on record more than 37 years and upon which the several lots in the block had been sold had incorrectly described the lots; that the excess of 29.02 should be equally divided between the several lot owners each being given a lot having a frontage of 52.41 feet. But to make this adjustment it appeared that the lines of each lot owner must be moved and that in some instances this would interfere with permanent improvements of the owners to the west of the parties who appeared. This cross-complaint was not served on defendants Doll and the trial was had without their appearance.

The trial court found that the allegations of plaintiffs' complaint were not sustained by the evidence, but that the evidence sustained the allegations of the cross-complaint. Judgment was thereupon rendered upon this cross-complaint in favor of cross-complainants quieting their title to lots 22, 23, and 24, together with a strip adjoining the westerly line of lot 22, 7.23 feet wide by 144.91 feet deep. The land thus set apart to cross-complainants was then described as having a frontage of 157.23 feet and a depth of 144.91 as described in the cross-complaint and the plaintiffs and defendants Doll were adjudged to have no estate or interest therein. The judgment also quieted plaintiffs' title to lots 20 and 21, ''together with a certain parcel or strip of ground 144.91 feet in length and of the uniform width of 4.82 feet, adjoining and of equal length to the westerly line'' of lot 20. The boundary line between the property of plaintiffs and cross-complainants was then fixed at 157.23 feet west of and parallel to the westerly line of Belgrave Avenue, and the boundary line between the property of plaintiffs and defendants Doll was fixed at 262.05 feet west of the westerly line of Belgrave Avenue. The decree was based upon the conclusion that there was an excess of ground along the north and south boundary of block ''E'' of 29.02 feet and that plaintiffs and cross-complainants were entitled under the equitable rule of apportionment to have added 2.41 feet to each lot as it appeared on the official map. The effect of the decree was to move cross-complainants' westerly bound-

ary line 7.23 feet over on lot 21 claimed by plaintiffs and by adding 4.82 feet to their holdings, their westerly boundary line was moved over on to the Dolls' lot 12.05 feet.

The motion to set the judgment aside was made upon the grounds of irregularity; that the findings disclosed that the allegations of the complaint were not sustained; that the cross-complaint was not served upon them, and that the judgment was void and without due process. The motion was granted as to these defendants and the court, of its own motion, set aside the judgment as to all other parties without prejudice to them. The plaintiffs appealed from the entire order while the cross-complainants appealed from that portion only of the order which set aside the judgment as to plaintiffs and themselves. By stipulation of all the parties both appeals are heard upon a bill of exceptions prepared by cross-complainants.

The motion of respondents to set aside the judgment, based upon want of jurisdiction, was a direct attack upon the judgment. (*Sharp* v. *Eagle Lake Lumber Co.*, 60 Cal. App. 386, 391 [212 Pac. 933]; *Norton* v. *Atchison etc. R. R. Co.*, 97 Cal. 388, 392 [32 Am. St. Rep. 198, 30 Pac. 585, 32 Pac. 452]; *Waller* v. *Weston*, 125 Cal. 201, 203 [57 Pac. 892].) This motion is made independently of and is not controlled by section 473 of the Code of Civil Procedure. (*In re Seaman's Estate*, 51 Cal. App. 409, 411 [196 Pac. 928]; *Baker* v. *O'Riordan*, 65 Cal. 368, 370 [4 Pac. 232]; 14 Cal. Jur., p. 907, par. 30.) If the judgment was based upon the cross-complaint it was void as to these respondents because they were not parties to the cross-complaint, it was not served upon them as required by section 442 of the Code of Civil Procedure, and they did not appear at the trial. (*White* v. *Patton*, 87 Cal. 151, 153 [25 Pac. 270]; *Houghton* v. *Tibbetts*, 126 Cal. 57, 60 [58 Pac. 318].)

The case is not like *Stanton* v. *Superior Court*, 202 Cal. 478 [261 Pac. 1001], and the authorities there cited. It has been long recognized as the rule in this state that the trial court may not vacate its judgment regularly entered, either upon motion or *sua sponte*, because of errors of the court alone. (*Williams* v. *Reed*, 43 Cal. App. 425, 432 [185 Pac. 515]; *Grannis* v. *Superior Court*, 146 Cal. 245, 257 [106 Am. St. Rep. 23, 79 Pac. 891].) Such

errors can be corrected only by appeal from the judgment, motion for new trial, or other motion specially provided by statute. But in *People* v. *Greene*, 74 Cal. 400, 405 [5 Am. St. Rep. 448, 16 Pac. 197], it is said: "A judgment which is void upon its face, and which requires only an inspection of the judgment roll to demonstrate its want of vitality, is a dead limb upon the judicial tree, which should be lopped off, if the power so to do exists. It can bear no fruit to the plaintiff, but is a constant menace to the defendant." Quoting this language with approval in *People* v. *Davis*, 143 Cal. 673, 676 [77 Pac. 651], the court said: "While it is immaterial in a certain sense whether such a judgment or order be formally set aside, for it neither binds nor bars anyone, still it is well settled that the court whose records are thus encumbered with what is a mere form without substance may at any time formally remove the same by declaring it a nullity." To the same effect are *Luckenbach* v. *Krempel*, 188 Cal. 175, 177 [204 Pac. 591]; *Estate of Pusey*, 180 Cal. 368, 374 [181 Pac. 648]; *Forbes* v. *Hyde*, 31 Cal. 342, 347.

In *Gray* v. *Hall*, 203 Cal. 306 [265 Pac. 246], it is said: "It cannot be denied that, in those cases in which judgments have been rendered without any or insufficient service, or where the party not only has had no opportunity to answer, but is so ignorant of any proceeding against him as not to have been able to avail himself of the remedies which the law gives him until he has lost them all, the judgment is absolutely void. Such a judgment may be attacked at any time, directly or collaterally."

That the judgment was based upon the cross-complaint admits of no doubt. The court found that the allegations of the complaint had not been sustained and based its judgment upon findings in accord with the allegations of the cross-complaint alone. These were so essentially different from the allegations in the complaint that respondents' default to the complaint did not justify the entry of the judgment against them. (*Balfour-Guthrie* v. *Sawday*, 133 Cal. 228, 230 [65 Pac. 400]; *Holman* v. *Vallejo*, 19 Cal. 499, 500.) The complaint described the property as lots 20 and 21 as they appeared on the map on file with the county recorder. Respondents had no interest in these lots and suf-

fered their default to be entered. The judgment gave the plaintiffs a strip 144.91x4.82 feet in addition to the property claimed by plaintiffs in their complaint and a strip 144.91x12.05 feet claimed by respondents but not described nor referred to in the complaint. When the default of defendants is entered the relief granted to the plaintiff cannot exceed that demanded in his complaint. (Sec. 580, Code Civ. Proc.) It is of no importance that the prayer of the complaint asked the court to fix the boundary lines of the lots. The description in the body of the complaint of the lots as they appeared upon the official map put respondents upon notice that title to these lots alone was involved. The judgment was based upon a theory entirely different from that pleaded—it was in the nature of a suit to reform the descriptions in the map and in the deeds of conveyance. Respondents were not summoned to answer such a suit and the court was without jurisdiction to enter the judgment against them. Such is the effect of *Balfour-Guthrie* v. *Sawday, supra,* and this requires an affirmance of that part of the order setting aside the judgment as to respondents.

█ Upon the face of the pleadings the lot owners of the entire block were necessary parties to the controversy and should have been joined as such (sec. 389, Code Civ. Proc.), as the only theory upon which the judgment was based was that the several lot owners were all jointly interested in the excess. █ But to enforce the judgment as entered it would be necessary to take 12.05 feet of respondents' land. To do this without giving them their day in court was a taking of property without due process. As the judgment is unsupportable on any theory of equity unless the 12.05 feet be taken from the respondents and some compensation given them for it, it is apparent that the controversy was one which could not have been determined between the parties before the court without prejudice to the respondents. Of this strip of 12.05 feet claimed by them, 4.82 feet was given to plaintiffs and 7.28 feet was theoretically given to cross-complainants. █ If the portion of the judgment affecting the respondents alone is vacated the judgment would then be an empty shell which could not be enforced because it would be impossible to ascertain what was determined by it. We are, therefore, satis-

fied that the void portion of the judgment relating to respondents is so interwoven with the entire judgment as to render it void *in toto*.

Though the court was without jurisdiction to enter any judgment against the respondents upon the cross-complaint because of want of jurisdiction of the person, it did enter such a judgment purporting to adjust between all the parties the properties claimed by each. It is impossible to segregate from the judgment the portions relating to respondents alone and leave a judgment which has any meaning or effect. The want of jurisdiction over the respondents being apparent upon the face of the record, the judgment becomes one of that class which may be attacked anywhere, directly or indirectly, and the trial court properly set it aside.

Some of the authorities cited hold that even where the judgment or order is void on its face application for relief must be made within a reasonable time. This question does not arise here, as the judgment was vacated within thirty days of its entry.

The order vacating the judgment as to all parties is affirmed.

Koford, P. J., and Sturtevant, J., concurred.